# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOANNA MARTINEZ-ARGUELLO,

    Plaintiff,

                                    Civil No. 02-0263 WJ/LCS

v.

THE UNITED STATES OF AMERICA,
LEE BOWMAN, in his official capacity as an
agent of the U.S. Government, and
LOVELACE HEALTH SYSTEMS, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER ON LOVELACE'S MOTION TO DISMISS

THIS MATTER comes before the Court upon Defendant Lovelace Health System's Motion to Dismiss Negligent Disclosure of Medical Records Claim Alleged in Count III of the Complaint, filed June 28, 2002 **(Doc. 9)**. Having considered the parties' briefs and the applicable law, I find that Defendant's motion is well-taken and will be granted.

### Background

The unauthorized release of medical records is the underpinning for Plaintiff's claims. Through these records, Defendant Lee Bowman, a federal agent, found out that Plaintiff had a prenatal checkup scheduled at Lovelace Hospital on December 26, 2002, and used that information as a means to apprehend Plaintiff's husband Raymond Arguello, who had allegedly violated the terms of his supervised release from a federal conviction. Plaintiff, who was eight months pregnant at the time, alleges that she was waiting with her husband in the examination room, dressed in a hospital gown and partially exposed, when Bowman burst into the room with nine other federal agents and two uniformed police officers. The complaint alleges a claim under

the Federal Tort Claims Act, 28 U.S.C. § 1346, a civil rights claim under the Bivens doctrine against the United States of America and Bowman (Counts I and II, respectively). Plaintiff also alleges state tort claims of negligent disclosure of medical records (Count III) and intentional infliction of emotional distress (Count IV) against Defendant Lovelace Health Systems, Inc. (LHS).

A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle her to relief. American Home Assur. Co. v. Cessna Aircraft Co., 551 F.2d 804, 808 (10th Cir. 1977); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In the instant motion, LHS moves for dismissal of Count III of the complaint, offering two bases for its request: that information pertaining to date and time of an appointment cannot be considered either a "medical record" or "confidential patient information," and in the alternative, that LHS is statutorily immune from liability for furnishing such information under N.M.S.A. § 14-6-1(B) (1978 Comp.).[1]

As a preliminary matter, it appears that the "medical information" which Plaintiff alleges LHS negligently disclosed was information limited to the date and time of her December 26, 2002 appointment. Plaintiff's response does not argue to the contrary except to point out that the complaint contained "general language" regarding the disclosure of Mrs. Arguello's medical information. Resp. at 4.[2]

---

[1] This portion of the statute states that a "custodian of information classified as confidential . . . may furnish the information upon request to a governmental agency or its agent. . . and the custodian furnishing the information shall not be liable for damages to any person for having furnished the information." § 14-6-1(B).

[2] That statement may be disingenuous because Plaintiff actually alleged in the complaint that LHS breached a duty of care by "releasing her medical information, *specifically* the date and time of her prenatal appointments," Compl. at ¶ 36 (emphasis added), as opposed to "medical information that *included* the date and time of her prenatal appointment" as Plaintiff states later in

2

**Discussion**

In Count III, Plaintiff alleges that LHS breached its duty to maintain patient confidentiality by releasing "medical information." LHS contends that the disclosed information is not confidential medical information, or subject to a physician-patient privilege. For the physician-patient privilege to apply, the patient must have consulted the physician for treatment or diagnosis looking toward treatment. State v. Roper, 122 N.M. 126, 128 (Ct.App. 1996); Reaves v. Bergsrud, 127 N.M. 446, 449 (Ct.App. 1999); NMRA 2002 Rule 11-504.[3] Information conveyed in that situation is confidential if (1) the patient intended that the communication be undisclosed, and (2) nondisclosure furthers the interest of the patient. Roper, 122 N.M. at 129 (citing Reaves at 450). LHS contends, and I agree, that the medical information at issue fails to meet the criteria under either prong.

The first prong, intent, is manifested when a party consents to treatment or diagnosis. Reaves, 127 N.M. at 450. "When a patient sees a physician for [the purpose of either diagnosis or treatment, or both], it should be implicit that the information conveyed in the private consultation and examination is exclusively for the patient's eyes and ears, absent the patient's consent." Id; State v. Franks, 119 NM 174, 177 (Ct.App. 1994) ("A communication is 'confidential' if not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation. . . ."). While communications that transpired between Plaintiff and her physician during her prenatal checkups would clearly be considered as confidential, the date

---

her response. Resp. at 2, ¶ 4.

[3] NMRA 2002 Rule 11-504 provides: "A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, . . . among the patient, the patient's physician or psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist[.]"

and time of her next scheduled appointment[4] can hardly be considered a communication "made for the purpose of diagnosis or treatment." Roper 122 NM at 130) (conduct of the patient agreeing to the evaluation in itself manifests an intent that any communications made for the purpose of diagnosis or treatment remain confidential).[5]

Proceeding to the second prong, nondisclosure furthers the interest of a patient because it prevents others from learning personal information about his or her "health and well-being." Roper, 122 N.M. at 130. Access to information concerning a date and time of a medical follow-up (particularly given the surrounding circumstance of Plaintiff's pregnant condition) does not fit into this category. Plaintiff cannot show that nondisclosure of the date and time of her next regular prenatal checkup furthers her privacy interest or promotes better delivery of her health care, or conversely, that disclosure of that information negatively affected those interests. Her argument that nondisclosure would have facilitated a "safe prenatal exam as opposed to a life threatening event which caused extreme distress, anxiety and instigated false labor," Resp. at 6, overreaches the contours of the inquiry at hand. How government agents (Defendant Bowan and other federal agents) made use of that information has no relevance to a determination regarding the inherent *nature* of the information disclosed.[6] Plaintiff also strains the limits of foreseeability with the statement in her response at page four that the disclosure was made with the "distinct likelihood that Mrs. Arguello would be in the midst of a pelvic examination if such confidential

---

[4] Without further clarification or rebuttal by Plaintiff, it seems that information regarding only the December 26, 2002 appointment time was disclosed and no other scheduled appointments.

[5] Plaintiff's reliance on Roper does not bolster her case. Roper involved the disclosure of the results of a blood test, which is much more easily characterized as information not intended for general disclosure.

[6] The request for the information regarding Plaintiff's appointment apparently came from the U.S. Marshals. Reply at 8.

4

medical information was disclosed."[7]

Further, this Court has no intention of stretching the application of physician-patient privilege beyond the confines of its intended purpose. State v. Roper, 122 NM 126, 128 (Ct.App. 1996) (physician-patient privilege is in derogation of common law and must be construed strictly against asserting party). LHS's position, that the information it disclosed does not qualify as confidential information subject to physician-patient privilege, is consistent with case law from other courts, Mem. at 6-7,[8] as well as a published New Mexico case. In Lara v. City of Albuquerque, et al., documents which included information concerning frequency or type of the employee's drug use, use on the job, and effects on family and work, were found to be confidential communications made for purposes of diagnosis or treatment. 126 N.M. 455, 458 (Ct.App. 1998) (involving psychotherapist-patient privilege under N.M.R.A. 11-504). However, information concerning the former employee's obligation to submit to random drug testing, his failure to report for the test, and the resulting consequences did *not* invoke the psychotherapist-patient privilege. Such information concerned the terms of his employment, rather than confidential communication made for purposes of diagnosis or treatment of his condition. Id.

---

[7] It is difficult to impute some kind of knowledge on the part of LHS (even in the sense that LHS should have considered it possible) that disclosure of the date and time of Plaintiff's next prenatal checkup would result in nine federal agents (and two uniformed police officers) bursting unannounced into an examination room with weapons drawn, where Plaintiff was barely clothed and waiting for an obstetrical examination to begin.

[8] See, e.g., Big Sun Healthcare Systems, Inc. v. Prescott, 582 So.2d 756, 757 (Fla.App. 1991) (privilege does not apply to sign-in logs at emergency room since such logs only record patient's name, health insurer, previous visits and time of triage); State v. Morales, 824 P.2d 756, 759, 170 Ariz. 360 (Ct.App. 1991) (privilege does not apply to identity of patient because information was not germane to treatment); Sorenson v. H & R Block, Inc., 197 F.R.D. 199, 205 (D.C.Mass 2000)(identity of therapist, dates and cost of treatment not privileged); and Simipson v. Braider, 104 F.R.D. 512, 513 (D.C.D.C. 1985) (names of therapists, dates of visits and general purpose of treatment are not within the patient's privilege).

Plaintiff's attempt to construe the disclosure of her "ongoing relationship as a violation of a general fiduciary duty LHS owed to her is also unsuccessful. Assuming the duty exists, see Eckhardt v. Charter Hospital, 124 N.M. 549 (Ct.App. 1997), that duty is neither absolute nor unbounded, but rather viewed within the context of already established public policy that has grown from "professional licensing statutes, rules of evidence, and our state constitution." 124 N.M. at 554. The New Mexico statute relating to the furnishing of health records and information, N.M.S.A. § 14-6-1 (1978 Comp.), reads:

> (A) *All health information that relates to and identifies specific individuals as patients* is strictly confidential and shall not be a matter of public record or accessible to the public even though the information is in the custody of or contained in the records of a governmental agency or its agent, a state educational institution, a duly organized state or county association of licensed physicians or dentists, a licensed health facility or staff committees of such facilities (emphasis added).
>
> (B) A custodian of information classified as confidential in Subsection A *may furnish the information upon request to a governmental agency or its agent*, a state educational institution, a duly organized state or county association of licensed physicians or dentists, a licensed health facility or staff committees of such facilities, and the custodian furnishing the information *shall not be liable for damages* to any person for having furnished the information (emphasis added).

A plain reading of the language in the provisions supports LHS's contention that, even if the disclosed material was confidential as defined in § 14-6-1(A)(which I find that Plaintiff has not sufficiently shown), LHS would be immune from liability for the disclosure under § 14-6-1(B). See Ingersoll-Rand Co. v. Mcclendon, 498 U.S. 133, 139 (1990) (traditional principles of statutory interpretation dictate that we first look at the plain meaning of the statutory language).[9]

---

[9] The New Mexico courts have reached a similar result with regard to the statute which concerns a fiduciary duty, or duty to maintain confidentiality, specific to the physician-patient relationship. That statute, NMSA 1978 § 61-6-14(B)(5) (Supp. 1983) precludes a physician from "willfully or negligently divulging a professional secret." However, while the provision describes and imposes ethical constraints, it has been held not to create a privilege in itself, "unless they relate to matters confided to a physician by his patient in confidence." Trujillo v. Puro, 101 N.M. 408, 412 (Ct.App.), cert denied, 101 N.M. 362 (1984) (affidavit of physician who reviewed

6

Nor do I find provisions (A) and (B) to be inconsistent or disharmonious, as Plaintiff suggests.

Count III (Negligent Disclosure of Medical Records) is premised on the breach of a duty LHS owed to Plaintiff by disclosing confidential material. Because the information does not constitute privileged material matter, Plaintiff cannot show a breach of any duty. Further, even if the material was confidential, LHS would be statutorily immune for disclosing such material to a government agency.

**THEREFORE**,

**IT IS ORDERED** that Lovelace Health System's Motion to Dismiss Negligent Disclosure of Medical Records Claim Alleged in Count III of the Complaint (**Doc. 9**) is hereby GRANTED.

_____
UNITED STATES DISTRICT JUDGE

---

treatment records of defendant physician did not "draw on matters involving confidential communications").